UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| WENDY DUNLEA, | ) | |
| | ) | |
| | ) | |
| v. | ) | Criminal  No. 06-92-B-S |
| | ) | |
| | ) | Civil No.   08-33-B-S |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |

**RECOMMENDED DECISION ON 28 U.S.C § 2255 MOTION**

Wendy Dunlea pled guilty to one count of bank embezzlement and two counts of credit card fraud and was sentenced to 63 months in prison to be followed by five years of supervised release.  Dunlea did not pursue a direct appeal although she had the right to do so under the terms of her plea agreement after this Court imposed a sentence exceeding the sentence anticipated in the agreement.  She has filed a 28 U.S.C. § 2255 motion with three substantive grounds: ineffective assistance of counsel vis-à-vis the plea agreement, judicial misconduct, and a challenge to the reasonableness of the points attributed to her in the Pre-sentence Investigation Report (PSI).  Dunlea also includes a fourth ground asserting that the venue for this 28 U.S.C. § 2255 proceeding should be reassigned from the District of Maine in light of her judicial misconduct claim.  The United States has filed a memorandum in opposition to Dunlea's motion. For the following reasons I deny Dunlea's request for a change of venue and  recommend that the court deny her 28 U.S.C. § 2255 relief on her three substantive claims.

**Discussion**

The First Circuit has summarized:

Section 2255 is not a surrogate for a direct appeal. Rather, the statute provides for post-conviction relief in four instances, namely, if the petitioner's sentence (1) was imposed in violation of the Constitution, or (2) was imposed by a court that lacked jurisdiction, or (3) exceeded the statutory maximum, or (4) was otherwise subject to collateral attack. See Hill v. United States, 368 U.S. 424, 426-27 (1962) (construing statute). The catch-all fourth category includes only assignments of error that reveal "fundamental defect[s]" which, if uncorrected, will "result[ ] in a complete miscarriage of justice," or irregularities that are "inconsistent with the rudimentary demands of fair procedure." Id. at 428.  In other words, apart from claims of constitutional or jurisdictional nature, a cognizable section 2255 claim must reveal "exceptional circumstances" that make the need for redress evident. See id. The burden is on the petitioner to make out a case for section 2255 relief. See Mack v. United States, 635 F.2d 20, 26-27 (1st Cir.1980).

David v. United States, 134 F.3d 470, 474 (1st Cir. 1998)

***Prosecution Version***

The Prosecution Version in Dunlea's case contains the following relevant information:

Were this matter to proceed to trial, the Government would introduce evidence that … [i] January 1999, Bangor Savings Bank hired Defendant as manager of its Bucksport, Maine, branch.  In that capacity, Defendant had access to customer account information and had authority to process deposits and withdrawals, loan applications, account openings and closings and a wide variety of other transactions involving customer accounts.  She also had authority to verify the accuracy of information on customer loan applications and to issue bank checks to customers for loan proceeds, account closings and other transactions involving bank funds.

The evidence would show that on July 22, 2005, bank customer Betty Larson attempted to withdraw funds from a certificate of deposit (CD) she held at Bangor Savings Bank and was informed that the CD was being held as collateral for a loan in her name.  Ms. Larson told bank employees that she had not taken a loan against her CD.  The bank therefore investigated the loan transaction and determined that it had been processed by the Defendant.  The documents associated with the loan would be introduced into evidence.  Ms. Larson would testify that although the loan is in her name and the application and associated documents appear to bear her signature, she had no knowledge of the loan, did not request it or sign the documents, and did not receive any proceeds from the loan.

The evidence would further show that the bank's initial investigation revealed two other loans, also processed by Defendant, that were similarly suspicious.  On July 23, 2005, Defendant was interviewed by bank security officers and admitted that she initiated the Larson loan and two others herself for

2

her own benefit.  Defendant was terminated from bank employment as of that date.

(Prosecution Version at 1-2.)  The six-page filing goes on to breakdown Dunlea's various transactions discovered in an audit. It lists four instances in which Dunlea withdrew funds from customers accounts through forged checks or withdrawal slips; nine times in which she forged loan documents in customers' names and used the loan proceeds for her own benefit; and four episodes in which Dunlea forged account closing documents, made out proceed checks, and signed them over to herself.  (Id. at 2-4.)  It also describes four transactions with particularity that involved more complicated conversions of substantial sums of money intended by the customers to be deposited in certificate of deposit accounts.  (Id. at 4-5.)  It further noted:

> The evidence would show that to conceal her embezzlement, Defendant altered customer account information so that monthly statements of account activity were mailed directly to a post office box she had rented, rather than to the customer.  The Government would also introduce evidence that two of the victims … were Defendant's parents, and a third… was her mother-in-law.  All the remaining victims were senior citizens (ages ranging from 78to 91) whose accounts showed high balances with little activity.
>      Finally, the evidence would show that the gross receipts from Defendant's embezzlement were $893,973.11.  During the six-year span of her misconduct, however, she used a portion of the money she embezzled to reconcile affected customer accounts, pay down or pay off unauthorized loans, and otherwise mask the effects of her scheme.  When she was first confronted about the scheme on July 23, 2005, she also turned over two bank checks she had fraudulently obtained but not yet cashed.  These offsets totaled $524,841.87.  The total amount of the loss associated with Count One, therefore, is $369,131.24.

(Id. at 5.)  The remainder of the Prosecution Version pertains to the two credit card fraud counts not at issue here.

**Judicial Misconduct and Request of a Change of Venue**

Of Dunlea's four complaints, it is necessary to address her accusation of judicial misconduct and her request for a change of venue first for obvious reasons.  It is questionable

3

whether or not the "judicial misconduct" claim that was not raised in a direct appeal meets the

David v. United States standard for cognizable 28 U.S.C. § 2255 claims but Dunlea does

disparage her attorney's performance on this issue and ineffective assistance claims are a

standard staple of 28 U.S.C. § 2255 proceedings.  See Knight v. United States, 37 F.3d 769,

774 (1st Cir. 1994). What is more, addressing the substance of the claim illustrates the lack of

merits in Dunlea's argument that venue should be changed for this proceeding.

     The basis for these challenges is that Judge Singal, the sentencing judge, should not have

presided over her case because, as discussed by the Court and the parties at the beginning of the

change of plea hearing, his wife is a corporator of Bangor Savings Bank.  The concern was

addressed as follows:

> THE COURT: In looking over this matter yesterday, I noted that the offense
> involved the Bangor Savings Bank. My family has no financial connection with
> the Bangor Savings Bank but, in the interest of disclosure, I should indicate that
> my wife is a corporator of that bank, not a real governing issue. And I don't see it
> as a conflict that exists or that can't be waived, since it isn't--since it doesn't
> involve a financial interest. However, if either side has any problem with that, I
> will have the matter transferred down to Portland and Judge Hornby will take care
> of it. If he cannot, he's got a conflict, then it will have to be in New Hampshire--
> and it will have it transferred to New Hampshire.
> (PAUSE)
> [DEFENSE COUNSEL]: We see no conflict, your Honor. We're happy to
> proceed today.

(Plea Tr. at 3.)  The prosecutor indicated her assent to going forward in front of Judge Singal (id.

at 4) and the change of plea hearing moved on.

     In her form 28 U.S.C. § 2255 motion Dunlea argues:

> Judge Singal should have recused himself based on perception.  Perception is
> everything in today's society.  The Court's perception of Defendant was tainted
> from the moment Judge Singal recognized Defendant was employed by Bangor
> Savings Bank, where his wife was Corporator.  It is the duty of a presiding Judge
> under both statutory and decisional law to recuse himself or herself when he or
> she has any doubt as to his or her ability to preside impartially or whenever his or

> her impartiality can be reasonably questioned.  Defendant believes [that in] this situation Judge Singal's ability to be impartial can be reasonably questioned.
> …
> Judge Singal's wife was a Corporator for Bangor Savings Bank thereby having a direct connection to the Bank and Defendant.  While we would all like to think that a Judge could be impartial it is very hard when the connection is one's spouse.  Seriously, how could this matter never be mentioned in their home?  How could Judge Singal stay impartial?  Why did he not recuse himself?  Even if he was impartial, the perception (true or not) was one of partiality.  At the Defendant's arraignment Judge Singal addressed the Court regarding his connection and permitted Defendant's Counsel to speak on the matter.  Counsel felt that Judge Singal would handle fairly based on the Plea Agreement.  Therefore, the Defendant did not question as the Defendant was basically told the time served would not exceed 41 months.
>
> We are hardly in a position, as we are scared out of our minds to question our Counsel never mind a Judge as they are the individuals with experience and law degrees.  To a great level, we rely, trust and put our lives in their hands not knowing the law ourselves.  At the same time the Defendant was going through her divorce, preparing for her sentencing, settling custody issues involving her two year old daughter and doing the hardest thing imaginable …  making arrangements to say good-bye to her child.  How do you ever explain to a child why Mommy will be gone so long?  So at that moment in the Courtroom the Defendant trusted not only her attorney but Judge Singal to do the right thing.

(Sec. 2255 Mem. at 4 & Page  A.)

In the portion of her reply memorandum addressing this claim, Dunlea focuses on the United States' argument that this ground was waived because Dunlea did not pursue a direct appeal, as she was allowed to do once the judge sentenced her to a sentence higher than anticipated in the plea agreement.  (Reply Mem. at 11-13.)   As to the substance of the claim she writes:

> It is very difficult to separate the court's disregard of the plea agreement and the option to sentence defendant to a higher sentencing guideline range from the possibility of a conflict of interest.  The fact that the Judge's spouse was a Corporator of Bangor Savings Bank, though it did not involve financial interests, is a conflict

(Id. at 11.)  She believes this conflict meant that she was "confronted by a judge who was set on punishing defendant by the full extent of the law."  (Id.)

5

The statutory provision pertaining to recusal is 28 U.S.C. § 455.  The First Circuit has explained:

> Section 455(a) stands at a crossroads where competing policy considerations frequently intersect. On the one hand, "courts must not only be, but must seem to be, free of bias or prejudice." In re United States, 666 F.2d 690, 694 (1st Cir.1981). On the other hand, recusal on demand would put too large a club in the hands of litigants and lawyers, enabling them to veto the assignment of judges for no good reason. Thus, compulsory recusal must require more than subjective fears, unsupported accusations, or unfounded surmise. See id.
>
> Section 455(a) attempts to reconcile these competing policies. The statute requires a judge to step down only if the charge against her is supported by a factual foundation and "the facts provide what an objective, knowledgeable member of the public would find to be a reasonable basis for doubting the judge's impartiality." Id. at 695 (emphasis in the original). While doubts ordinarily ought to be resolved in favor of recusal, see Nichols v. Alley, 71 F.3d 347, 352 (10th Cir.1995); United States v. Dandy, 998 F.2d 1344, 1349 (6th Cir.1993), the challenged judge enjoys a margin of discretion.

In re United States, 158 F.3d 26, 30 (1st Cir. 1998); accord In re United States, 441 F.3d 44, 56-57 (1st Cir. 2006).  "Thus, under § 455(a) a judge has a duty to recuse himself if his impartiality can reasonably be questioned; but otherwise, he has a duty to sit. United States v. Snyder, 235 F.3d 42, 46 (1st Cir. 2000);  see also United States v. Cruzado-Laureano, 527 F.3d 231, 239 (1st Cir. 2008). This court already made the determination that it could impartially preside over Dunlea's case.   Nothing in this record provides a basis for reconsidering that determination. Dunlea's argument of bias by the judge because of his wife's non-financial, ministerial involvement with Bangor Savings Bank is no more than superficial surmise.  It follows that Dunlea's argument in her first ground charging counsel with being ineffective for not pressing for recusal (Sec. 2255 Mem. Page A) is meritless under the performance and prejudice prongs of Strickland v. Washington, 466 U.S. 668 (1984).

And with regards to Dunlea's request that the venue of this 28 U.S.C. § 2255 proceeding be moved to the District of Massachusetts, she asserts the same rejected argument that Judge

Singal is not able to be impartial.[1]  To this she adds a lengthy description about the allegedly collusive relationship between Bangor Savings Bank and Progressive Insurance Company (Sec.2255 Mem. Pages C&D) that is entirely irrelevant to the choice of venue decision.[2]

The appropriate venue for this 28 U.S.C. § 2255 motion is the District of Maine, the district in which she was convicted and sentenced, see In re Davenport, 147 F.3d 605, 609 (7th Cir. 1998)("The purpose behind the enactment of section 2255 was to change the venue of postconviction proceedings brought by federal prisoners from the district of incarceration to the district in which the prisoner had been sentenced."), and her § 2255 claims are reviewable by the judge who presided over her plea and sentencing proceedings,  see United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993).

**Performance of Counsel relating to the Plea Agreement**

As indicated above, ineffective assistance claims are properly brought in the context of a 28 U.S.C. § 2255 proceeding. See Knight, 37 F.3d at 774.  Ineffective assistance claims arguing that counsel made his or her client "agree to an unsound plea" are "usually hard to sustain" as they "require [the § 2255 movant] to show that counsel's advice was manifestly incompetent and that the incompetence had probably altered the outcome." United States v. Torres-Rosario, 447 F.3d 61, 64 (1st Cir. 2006) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)).

The conviction at the heart of this case is Dunlea's 18 U.S.C.§ 656 bank fraud conviction. Section 656 provides:

Whoever, being an officer, director, agent or employee of, or connected in any capacity with any Federal Reserve bank, member bank, depository institution

---

[1]    Dunlea also suggests that transferring the case to another judge in this District would not be a solution because of the sway of collegial relations.

[2]    The United States reads Dunlea's 28 U.S.C. § 2255 motion as raising a claim that the venue issue should have been addressed at the time the criminal charges were pending.  Dunlea clearly indicates that her change of venue request pertains to "this Motion."  (Sec. 2255 Mem. at 4.)

holding company, national bank, insured bank, branch or agency of a foreign bank, or organization operating under section 25 or section 25(a) of the Federal Reserve Act, or a receiver of a national bank, insured bank, branch, agency, or organization or any agent or employee of the receiver, or a Federal Reserve Agent, or an agent or employee of a Federal Reserve Agent or of the Board of Governors of the Federal Reserve System, embezzles, abstracts, purloins or willfully misapplies any of the moneys, funds or credits of such bank, branch, agency, or organization or holding company or any moneys, funds, assets or securities intrusted to the custody or care of such bank, branch, agency, or organization, or holding company or to the custody or care of any such agent, officer, director, employee or receiver, shall be fined not more than $1,000,000 <u>or imprisoned not more than 30 years</u>, or both; but if the amount embezzled, abstracted, purloined or misapplied does not exceed $1,000, he shall be fined under this title or imprisoned not more than one year, or both.

18 U.S.C. § 656 (emphasis added).   By the terms of the statute Dunlea was facing a statutory maximum sentence of thirty years.[3]

The plea agreement clearly indicates that the maximum prison term was thirty years on this count.  (Plea Agreement at 1.)  It further reflected the following agreements regarding recommendations for sentencing:

A.  The 2005 edition of the <u>Guidelines Manual</u> applies;
B.  The base offense level applicable to Defendant is 7 pursuant to U.S.S.G.§ 2B1.1(a)(1);
C.  Defendant is subject to a 12-level enhancement pursuant to U.S.S.G. § []2B1.1[](b)(1)(G)[] <u>because the total amount of loss, minus all credits, exceeded $200,000;</u>
D.  Defendant is subject to a two level enhancement pursuant to U.S.S.G. § 3B1.3 for abuse of a position of trust;
E.  Defendant has accepted responsibility for the offense of conviction, and the Court should reduce her Adjusted Offense Level by three levels under U.S.S.G. § 3E1.1[; and]
F.  The Government reserves the right to argue that Defendant is subject to a two-level enhancement pursuant to U.S.S.G. § 3A1.1 for vulnerable victims.

(<u>Id.</u> at 3)(emphasis added).   The United States reserved the right not to make the acceptance of responsibility recommendation if, going forward, Dunlea failed to truthfully admit her offense

---

[3]        Unlike the drug offense statutes, this statute does not have inbuilt gradations for length of sentence tethered to the amount of offense conduct.

and agreed –upon enhancement conduct; engaged in new § 3C1.1 criminal conduct; or falsely denied or frivolously contested relevant  § 1B1.3 conduct.  (Id. at 3.)  It cautioned: "Defendant understands that if the Court rejects these recommendations, she will not thereby be permitted to withdraw her plea of guilty, and further understands that the Court has the discretion to impose any lawful sentence."  (Id. at 4)(emphasis added).  Dunlea waived her right to appeal her guilty plea and her conviction and a sentence of imprisonment "that does not exceed the number of months provided for [a]n offense level 20 at a Criminal History Category to be determined by the Court."  (Id. )(emphasis added).

In her § 2255 motion Dunlea argues:

> Defendant questioned Counsel upon reading [the] Plea [Agreement] as the money amount was incorrect.  Counsel advised Defendant to sign, implying that Plea was correct and the point level would be 20 (33-41 months).  The most Defendant could receive.  Defendant signed never being made aware by Counsel that this could change based on the PSI report.  Having known this, Defendant would never have signed Plea Agreement until finality of PSI report and all level points were determined.  Having said that, Defendant received a total of 26 points and was sentenced to 63 months.

(Sec. 2255 Mem. at 4 & Page A.)

In her reply memorandum she faults counsel for advising her to accept an agreement that was only binding on her and not the Government.  (Reply Mem. at 3.)  She explains:

> Defendant admitted and accepted her involvement in the six-year span of misconduct; however prior to the instant offense, defendant had no knowledge of the purpose of the plea agreement.  The waiver of statutorial and constitutional rights was not a meaningful action due to the fact that at the time defendant had no grasp of the extending consequences….
> …What is unconstitutional is the ineffectiveness of a counsel that allows a defendant to enter into an agreement that does not represent an informed choice.
> …
> Defendant understood the plea agreement and intended to be bound by it; however, under strict scrutiny the terms of the agreement are only binding to defendant. Counsel did not execute his duties properly by allowing defendant to enter a plea agreement that would render  a judgment in a guideline range of 33-

9

> 41 months in prison and would only be binding to defendant.  By the sentencing hearing, the government, the probation office and the court, had developed an elaborate detrimental report that rendered defendant a sentence almost twice as long that what she had pleaded to, a judgment of 63 months.  Where is the benefit to the defendant, who extended a substantial benefit to the state?  How can counsel's performance be construed as under a 'standard of reasonableness?'"  Defendant signed a plea agreement that quoted a base offense level of 20 and a sentence that did not exceed the number of months provided by it.  At sentencing her total offense level was brought to 26 in criminal history category one, which rendered her guideline range 63 to 78 months in prison.  That is deficient performance by counsel.  A 63 month sentence, when one signs a plea agreement for 33 to 41 months sentence is a clear demonstration of major prejudice.

(Id. at 3-6.)  Dunlea also asserts that her decision to sign the plea agreement was "predicated on the notion that the factual underpinnings of the investigation would support the calculation."  (Id. at 6.)  "She understood that she was pleading guilty to a net verifiable loss of $395,662.25 which would render her a statutory maximum sentence of 41 months." (Id. at 7-8.)  She also opines:  "Counsel should have for[e]seen the Judge rejecting the plea bargained sentence after reviewing the "PSI" and should have advised defendant on withdrawing plea."  (Id. at 9.)

Dunlea does not claim that she is innocent of the 18 U.S.C. § 656 bank fraud offense. She does not suggest she would have gone to trial; her proposed alternative was that she would have waited to sign the plea agreement until after the PSI was complete.  However, the PSI is never completed until after a guilty plea. Dunlea does not provide credible evidence that the figures relied on that sent her over the $400,000 cusp were not reflective of her criminal conduct. Her argument is more that she wanted to hold the Government to what it learned in its initial investigation.   Dunlea belittles the importance of the acceptance of responsibility departure recommendation achieved by her plea agreement:  "The three-level reduction for acceptance of responsibility should be viewed as a benefit to defendant for pleading guilty and saving the Government the trouble and expense of going to trial."  (Reply Mem. at 10.)

10

With regard to the related concern of counsel's performance once the PSI materialized, I note that he did object to the embezzlement and loss amounts reflected in the report.  (PSI at 15.) Counsel maintained that the amounts listed in the prosecution version were the numbers that should be relied upon.  (Id.)  The report preparer responded:

> This office utilized a spreadsheet created by Bangor Savings Bank.  It is the understanding of this office that all parties already have this spreadsheet as a part of discovery.  This office added the amounts embezzled, then subtracted the interest that had been added to the amounts and finally subtracted the amount of payments that the defendant made.

(Id.)  Counsel also objected to the enhancement for vulnerable victims, pointing out that, while all the victims in the case were elderly and had little activity on their accounts, they should not be characterized as mentally infirm.  (Id. at 16.)  The report writer responded that the office rejected the argument that the victims were chosen randomly out of the 2,740 branch customers, noting that Dunlea had relationships with victims.  (Id.)  And Dunlea's third and final objection to the sophisticated means enhancement played out as follows:

> The defendant objects to the 2 level enhancement for "sophisticated means" and all calculations made applying that enhancement.  The letter specifically states "There were no false entities created, no bogus accounts or any other activities that would make this case unusual in the realm of bank embezzlement cases.  All embezzlement cases involve some means of concealment and false records.  This is simply the nature of the offense.  There should be no enhancement for this characteristic."
>
> This office first directs the Court to the comments made by the Government in response to this objection.  This office concurs with the Government that the defendant adopted the information in the prosecution version which included opening unauthorized accounts using forged document[s] and making false entries.  This office is disturbed by what appears to be minimization of the offense by the defendant and an outright denial of events as they were presented at the Rule 11 hearing.  While this office does not believe that the concerns rise to the level of removing the reduction for acceptance of responsibility, the position does give pause.

(Id.)

11

Dunlea complains that the PSI rendered her guideline range 63-to 78 months in prison and that was attributable to "deficient performance by counsel" but the guideline range, as this Court is well aware, is a reflection of the severity of Dunlea's criminal conduct over the span of six years. Had Dunlea's attorney advised her not to take the plea agreement she certainly risked forfeiting both the PSI and the Government's recommendation that she receive a reduction of her sentence for acceptance of responsibility given the PSI note on Dunlea's third objection. There might not have been a huge advantage to Dunlea in securing this plea agreement but the agreement did stand-out as a key issue when the Court took a recess to consider Dunlea's ultimate sentence. (Sentencing Tr. at 47). This Court may not have settled on a below guideline sentence because of it – and in my view defense counsel presented an admirable argument on Dunlea's behalf in an attempt to move the Court to do so – it did settle on the lowest possible sentence within the range.   I conclude that this claim does not meet the Strickland/ United States v. Torres-Rosario standard.

### *Reasonableness of Dunlea's 26 Point Level*

Dunlea's challenge to her 26 Point level includes questioning the court's finding that there were ten or more vulnerable victims. She remarks that during the period of embezzlement she paid in full on two of these accounts and if these two victims had not been part of her sentencing calculations then there would not have been a two point enhancement. (Sec. 2255 Mem. at 5 & Page D.)[4]   With regards to her sophisticated means enhancement Dunlea characterizes her conduct as "straight forward banking." (Id. at Page D.)  She blames Bangor Savings Bank for only having one audit in six years, opining: "Had Bangor Savings did their audits as required

---

[4]         Dunlea claims that she only pled guilty to eight victims. (Reply Mem. at 9.)

they would have easily found these discrepancies, thereby negating sophisticated means and resulting in a 2 point level decrease." (Id.; Reply Mem. at 10.)  Finally she advances attacks on the increased dollar amount in the PSI.  (Sec. 2255 Mem. at Page D.) "Figures used in the PSI report were based off a simple excel spreadsheet generated by Bangor Savings Bank vs the money amounts in the Plea Agreement which were supposedly substantiated at the time of the Plea." (Id.)  She questions why Progressive Insurance refused to pay substantial amounts on the loss and the PSI's indication that the bank had a deductible because Dunlea believes this would be covered by the FDIC.  (Id.)  "Something is amiss," Dunlea believes.  (Id.)

In her reply memorandum Dunlea for the first time raises a challenge to the two-level increase for abuse of a position of trust.  (Id. at 10.)  Her argument is facile:  "The position of branch manager is what put her in the position that enabled her to embezzle." (Id.) In her reply memorandum Dunlea also references Apprendi v. New Jersey, 530 U.S. 466 (2000) arguing that the facts that led to her 63-month sentence were "neither admitted by the defendant nor found by a jury." (Reply Mem. at 11; see also id. at 7,12.)  She indicates that in her plea she only "admitted to an amount between $200,000 and $400,000."  (Id. at 7.)

Dunlea's right to appeal the sentence was expressly discussed with her at the time the sentence was imposed:

> THE COURT: All right. You may rise, Mrs. Dunlea. You have entered into a plea agreement that appears to waive some of your rights to appeal the conviction. Those waivers are generally enforceable. If you believe your waiver is, for some reason, unenforceable with regard to that right, you can present that argument to the Court of Appeals. You do have a right to appeal your sentence. If you wish to exercise your rights of appeal, you must cause to be filed with the clerk of this court within ten days of today, and not after that, a written notice of appeal, and if you fail to timely file that written notice of appeal, you will have given up your rights to appeal your sentence and whatever rights you have to appeal your conviction. Do you understand?
> THE DEFENDANT: Yes, Your Honor.

13

> THE COURT: If you cannot afford to file the appeal, the appeal will be filed
> without any cost to you, and on your request, the clerk of this court will
> immediately prepare and file that notice of appeal for you. Do you understand?
> THE DEFENDANT: Yes, Your Honor.

(Sentencing Tr. at 54.)  Dunlea makes no argument that her ability to exercise her right to appeal

was hindered in any way.  These challenges to her sentence are not cognizable at this juncture.

See  David, 134 F.3d at 474.

### *Conclusion*

For the reasons above I deny Dunlea's request for a change of venue and recommend that

the court deny her 28 U.S.C. § 2255 relief on her three substantive claims.  I further recommend

that the court not issue a certificate of appealability because there is no substantial issue that

could be presented on appeal.  See Fed.R.App.P. 22b – First Circuit Local Rule 22.1.

### NOTICE

A party may file objections to those specified portions of a magistrate
judge's report or proposed findings or recommended decisions entered pursuant to
28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought,
together with a supporting memorandum, within ten (10) days of being served
with a copy thereof.  A responsive memorandum shall be filed within ten (10)
days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de
novo* review by the district court and to appeal the district court's order.

July 15, 2008.

/s/Margaret J. Kravchuk
U.S. Magistrate Judge

14